IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANK VAN DEN BOSCH,

                      OPINION and ORDER

        Plaintiff,

                      09-cv-62-bbc

    v.

RICK RAEMISCH, DAN WESTFIELD,
MIKE THURMER, DON SIROTTA,
SGT. DULKE, WILLIAM POLLARD,
KEVIN POSTL, RICHARD SCHNEITER,
GARY BOUGHTON, SGT. HUIBREGTSE
and PETER ERIKSEN,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Frank Van Den Bosch was the publisher of <u>The New Abolitionist</u>, a newsletter about Wisconsin prisons. In this case brought under 42 U.S.C. § 1983, plaintiff contends that various prison officials at the Wisconsin Department of Corrections violated his rights under the First Amendment and the due process clause when they refused to deliver the March 2007 edition of the newsletter to prisoners and failed to provide him with proper notice of the decision. Now before the court are the parties' cross motions for summary judgment and plaintiff's motion for leave to amend his complaint to substitute

1

Mark Lezatz, Timothy Huck and Roy Kahl for defendants Sgt. Dulke and Kevin Postl. Dkt. ##27, 42 and 43.

In his summary judgment motion, plaintiff relies primarily on Johnson v. Raemisch, 557 F. Supp. 2d 964 (W.D. Wis. 2008), in which I concluded that Rick Raemisch, Dan Westfield and Mike Thurmer violated a prisoner's First Amendment rights by refusing to deliver to him the March 2007 edition of The New Abolitionist. In response to Johnson, the Department of Corrections now allows prisoners to read and possess that issue of the newsletter, but plaintiff seeks damages for censorship that occurred in 2007. In their summary judgment motion, defendants argue that issue preclusion should not apply, that Dan Westfield is the only appropriate defendant, that none of the defendants violated plaintiff's constitutional rights and that each of the defendants is entitled to qualified immunity.

Defendants' motion for summary judgment will be granted and plaintiff's motion will be denied. With respect to plaintiff's claim under the First Amendment, I conclude that defendants are entitled to qualified immunity. With respect to the due process claim, I conclude that defendants provided plaintiff with sufficient notice to satisfy constitutional requirements. This decision moots plaintiff's motion for leave to amend his complaint. In that motion, plaintiff does not seek to add any claims, only change some of the defendants. Because the decision on the motions is not contingent on the personal involvement of any

2

of the defendants, allowing plaintiff to amend his complaint would not alter the outcome.

## OPINION

### A. First Amendment

Plaintiff asserts rights under three clauses in the First Amendment: free speech, freedom of the press and the right to petition the government for redress of grievances. In addition, he asserts a separate First Amendment claim for "retaliation." However, each of these claims is derived from the same decision not to distribute the March 2007 edition of plaintiff's newsletter. Plaintiff's right to petition the government was not implicated by that decision because he was not prohibited from complaining to public officials, he was prohibited from communicating with prisoners. Further, plaintiff's theory for his "retaliation" claim is that defendants refused to deliver his newsletter because they wanted to suppress its contents, but that is simply a restatement of his other First Amendment claims.

I need not decide whether plaintiff's claim is analyzed more appropriately under the free speech clause or the free press clause because the governing standard is the same in either event. As both sides acknowledge, the question is whether the decision to censor the newsletter is reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78 (1987), the standard that applies to all claims involving the First Amendment rights

of prisoners. Shaw v. Murphy, 532 U.S. 223 (2001). Although plaintiff is not a prisoner, the Supreme Court has held that Turner applies to all claims involving "the maintenance of order and security within prisons," regardless whether the claim is brought by a prisoner or someone on the outside trying to communicate with prisoners. Thornburgh v. Abbott, 490 U.S. 401, 410 & n.9 (1989).

Defendants rely on several grounds for dismissing this claim, but the only one I need to reach is their claim of qualified immunity, an issue not raised by the defendants in Johnson. Under that doctrine, public officials may not be held liable for money damages for making reasonable mistakes. Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal quotations omitted) (doctrine provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law"). The specific question in any case is whether the case law at the time of the events giving rise to the lawsuit put the defendants on notice that they were violating the Constitution. Alexander v. City of Milwaukee, 474 F.3d 437, 446 (7th Cir. 2007). The burden is on the plaintiff to show that qualified immunity does not apply. Mannoia v. Farrow, 476 F.3d 453, 457 (7th Cir. 2007). In practice this means that the plaintiff must point to a Supreme Court case, a case from the Court of Appeals for the Seventh Circuit or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." Wilson v. Layne, 526 U.S. 603, 617 (1999). Alternatively, plaintiff may show

that "a general constitutional rule already identified [applies] with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." Michael C. v. Gresbach, 526 F.3d 1008, 1017 (7th Cir. 2008).

Plaintiff has not met his burden of showing that it was clearly established in 2007 that his critical and provocative but nonviolent language was protected by the First Amendment in prison. He says only that "[t]here is no question that plaintiff's Right to be from Retaliation for the free speech in the newsletter" and his "Right to Freedom of the Press" were "clearly established." Plt.'s Br., at 7, dkt. #53. In support of that argument, he cites Massey v. Johnson, 457 F.3d 711 (7th Cir. 2006), a case about the free speech rights of university employees, and Bridges v. State of California, 314 U.S. 252 (1941), in which the Court overturned a conviction of a newspaper editor for writing an editorial denouncing members of a labor union. Neither Massey nor Bridges bears any resemblance to this case.

Plaintiff cannot defeat the immunity defense "simply by alleging violation of extremely abstract rights." Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). The general rights to free speech and a free press have been clearly established for many years, but this general proposition does not answer the questions raised by this case. As I noted in Johnson, 557 F. Supp. 2d at 971, "in the prison setting, all bets are off when it comes to how and to what extent the First Amendment should be applied." Cases about the rights of nonprisoners cannot be used to show that a right is clearly established in the prison context.

5

I need look no further than the Eastern District of Wisconsin to see that plaintiff's right to distribute the March 2007 newsletter was not clearly established at the time prison officials censored it. Around the same time I decided Johnson, Judge Griesbach decided West v. Endicott, 2008 WL 906225, *13 (E.D. Wis. 2008), concluding in a thoughtful opinion that prison officials had not violated a prisoner's First Amendment rights by refusing to deliver The New Abolitionist to him. Although West involved different issues of the newsletter that included arguably more combative language, the questions raised in both cases were similar. If two district courts in the same state come to different conclusions despite reviewing the same law, it is difficult to argue that prison officials were "plainly incompetent" for failing to realize that they may have been violating plaintiff's constitutional rights. Even if West is distinguishable, plaintiff fails to point to other cases that would have provided notice to defendants.

## B. Due Process

Plaintiff's due process claim is that defendants failed to provide him with notices for *each* copy of the newsletter that they refused to deliver. Plaintiff says he received only 35 notices of nondelivery out of the approximately 250 copies that he sent to Wisconsin state prisoners.

A number of courts have concluded that both publishers and prisoners have a right

to receive notice when prison officials refuse to deliver a publication or other written material from outside the prison.  E.g., Jacklovich v. Simmons, 392 F.3d 420, 433 (10th Cir. 2004); Prison Legal News v. Cook, 238 F.3d 1145, 1152-53 (9th Cir. 2001); Montcalm Publishing Co. v. Beck, 80 F.3d 105, 109 (4th Cir. 1996); Martin v. Kelley, 803 F.2d 236, 243-44 (6th Cir. 1986).  The source of this rule seems to be Procunier v. Martinez, 416 U.S. 396, 406 (1974), in which the Supreme Court stated that

> the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards.  The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment. As such, it is protected from arbitrary governmental invasion.

The Court did not explain how a censorship decision necessarily constitutes a deprivation of "liberty" within the meaning of the due process clause.  The Court cited Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972), and Perry v. Sindermann, 408 U.S. 593 (1972), cases involving questions whether certain employment decisions might be entitled to protection under the due process clause.  Presumably, the policy behind the rule is that a person will not be able to challenge any censorship that occurred if he does not have notice of the nondelivery.

Regardless of the basis for the holding in Martinez, there may be reason to question its continuing viability.  In general, Martinez represents a more expansive view of prisoner

7

rights than the Court has held in recent years. E.g.,Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989) (overruling certain aspects of Martinez). In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court significantly limited the reach of the due process clause in the prison context. In particular, it concluded that a restriction does not trigger due process protections unless it is an "atypical and significant hardship." Id. at 484. It is questionable whether a failure to receive a publication would meet that standard. Cf. Rowe v. Shake, 196 F.3d 778, 782-83 (7th Cir. 1999) (concluding that Sandin "foreclosed" prisoner's claim that delays in receiving mail violated his due process rights). Although Sandin may not apply to plaintiff because he is not a prisoner, the changes in due process jurisprudence since Martinez suggest that courts should reexamine the assumption that due process applies in this context.

Even if I assume that plaintiff was entitled to notice of the censorship, I agree with defendants that he received the notice that he was due. The notices that plaintiff received explain that the issue was being rejected because its content posed a security threat. Plt.'s Aff., exh. B., dkt. #16. Many of the notices stated explicitly that the decision was a "DOC WIDE DENIAL." That was sufficient. "Due Process is not a technical conception with a fixed content unrelated to time, place, and circumstances; instead, it is flexible and calls for such procedural protections as the particular situation demands." Clancy v. Office of Foreign Assets Control of U.S. Dept. of Treasury, 559 F.3d 595, 600 (7th Cir. 2009)

8

(internal quotations and alterations omitted). In this case, plaintiff had all the information he needed to challenge the decision, if that is what he wanted to do; additional notices would have served little purpose, if any.

Plaintiff argues that his failure to receive a notice for *each* denial violated state regulations, but that is irrelevant to a claim under the due process clause. A violation of state law procedures might give rise to a claim under state law, but the procedures required by due process are determined by federal law. Boyd v. Owen, 481 F.3d 520, 524 (7th Cir. 2007) ("[T]he requirement of due process is not defined by state rules and regulations, but is an independent determination."); see also Rujawitz v. Martin, 561 F.3d 685, 688 (7th Cir. 2009).

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Rick Raemisch, Dan Westfield, Mike Thurmer, Don Sirotta, Sgt. Dulke, William Pollard, Kevin Postl, Richard Schneiter, Gary Boughton, Sgt. Huibregtse and Peter Eriksen, dkt. #27, is GRANTED.

2. Plaintiff Frank Van den Bosch's motion for summary judgment, dkt. #43, is DENIED.

3. Plaintiff's motion for leave to amend his complaint, dkt. #44, is DENIED as

9

moot.

4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 1st day of December, 2009.

                              BY THE COURT:

                              /s/

                              _____
                              BARBARA B. CRABB
                              District Judge